UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| | ) |
| JANAT NANSAMBA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 11-CV-11459-PBS |
| | ) |
| NORTH SHORE MEDICAL CENTER, INC. | ) |
| and ELLEN BOVA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

May 21, 2012

Saris, U.S.D.J.

## I. INTRODUCTION

Plaintiff Janat Nansamba alleges that Defendants North Shore
Medical Center, Inc. ("NSMC") and Ellen Bova, her supervisor,
violated the Family and Medical Leave Act (the "FMLA"), 29 U.S.C.
§§ 2601-2654, by terminating her employment on May 10, 2010 in
retaliation for taking protected leave and by interfering with
her protected rights.  Plaintiff also asserts a state law
intentional interference with advantageous relations claim.
Defendants move for summary judgment, and Plaintiff opposes.
After hearing and review of the briefs, the motion is **ALLOWED**
with respect to the FMLA claim.

1

## II. FACTUAL BACKGROUND

When all reasonable inferences are drawn in favor of the Plaintiff, the record contains the following facts.  Many are hotly disputed.

### A. Employment Performance

Plaintiff worked for NSMC from 2002 until her termination. (Doc. 26, Ex. 3 ¶ 3).  Prior to 2009, her performance evaluations indicate that she consistently met the standard in each evaluation area.  (Id. at Exs. 12-19).  She occasionally exceeded the standard and was not evaluated as "needing improvement" in any area until September 2009.  (Id.)  She also received an excellence award for outstanding performance in December 2007. (Id. at Ex. 20).

In March 2008, Plaintiff received her "first written warning" regarding patient complaints that included allegations that Plaintiff scratched patients and was rude to them.  (Doc. 24-3, Tab A at 29).  The warning stated, "Further violation will result in further disciplinary action up to and including termination."  (Id.)  In Autumn 2009, Plaintiff's new supervisor, Ellen Bova, received multiple complaints about her performance. In October 2009, Bova issued Plaintiff a final written warning that listed multiple performance complaints and stated that further violation could lead to termination. (Bova Aff. ¶¶ 9-11;

Doc. 24-3, Tab A at 26).   In December 2009, Bova placed Plaintiff

on an "individual development plan" for four weeks.   (Bova Aff.,

Tab F).   Several months later, on May 3, 2010, Bova received a

complaint that Plaintiff had refused to help a critically ill

patient and pushed her knee into his back.   (Id. at Tab G).   As a

result, Bova commenced a formal investigation to determine

whether Plaintiff should be terminated.   (Id. ¶ 16).

## B. Hemorrhoids

On Wednesday, May 5, 2010, Nansamba experienced gastro-

intestinal bleeding and received an examination by her primary

care physician.   She went to work, and completed her scheduled

overnight shift at NSMC.   (Pl's Dep. at 18-22).

On May 6, 2010, Plaintiff continued to experience this

bleeding and saw her physician again.   (Doc. 26, Exs. 1-2).   Her

physician recommended a colonoscopy.   (Pl's Aff. ¶ 4).   Later

that day, Plaintiff reported for her scheduled 11:15 p.m. to 7:15

a.m. work shift at NSMC.   (Id.)   At 2:00 a.m., the bleeding

worsened.   (Id. at ¶ 6).   Feeling increasingly lightheaded, she

feared she might faint.   (Id.)   When Plaintiff told her

supervisors that she was not well, they permitted her to leave

her shift early. (Dec. 26, Ex. 3 ¶¶ 12-13).   At the time she left

work, Plaintiff only finished three hours of her eight hour

shift.   (Pl's Aff. ¶ 8).   She informed her supervisor before

departing that she had been unable to take the vital signs of the

patients in three rooms under her care.[1]  (Id.).  Later that same
morning of Friday, May 7, 2010, Plaintiff telephoned her manager,
Ellen Bova, and informed her that she had left her shift early
and would need time off to have the colonoscopy.  (Id. at ¶ 9).
Bova gave her permission to stay out of work for the procedure
and did not have any expectation about when Plaintiff would
return to work.  (Bova Dep. at 107).

On May 7,2010, Nansamba also called Dr. Coates, who referred
her to Dr. Chen of Massachusetts General Hospital.  (Pl's Aff. ¶
10).  Dr. Chen scheduled Nansamba for a colonscopy on Tuesday,
May 11, 2010, and prescribed medications in preparation for the
colonoscopy.  (Id.)  Over the next two days, May 8 and 9,
Nansamba took the prescribed HalfLytely and bisacodyl, which
caused diarrhea.  (Id. at ¶¶ 11-12).  She continued to feel weak
and lightheaded. (Id.)

On the morning of May 10, Bova ordered Plaintiff to report
to the Human Resources department. (Pl's Aff. ¶ 13).  Plaintiff
was fired by Bova upon arriving.  (Id. at ¶¶ 13-14).  Her
discharge documentation lists the following as the
"incidents/issues leading to discharge":

---

[1] Bova's version of the night of May 6 and early morning of
May 7 is very different from Plaintiff's.  Bova states that upon
arriving to work on May 7, she heard reports from four
individuals that Plaintiff had disappeared during her shift, been
found talking and giggling on her cell phone in a closet, and had
failed to take the vital signs of patients before departing.
(Bova Aff. ¶¶ 17-18, Tab H).  Plaintiff denies these facts.

<u>May 3, 2010</u>: Serious patient complaint (second with same pattern of behavior)
<u>May 7, 2010</u>:
- Using cell phone
- Not responding to call bells and specific patient requests
- Not performing required duties in a timely manner (Vital signs and I & O's). The fact that these were not completed were only discovered after Janet had left for the evening because she wasn't feeling well and she did not report these incomplete tasks to anyone.

<u>Historical Data</u>
October 2009 – <u>final warning</u> for patient complaint and patient safety issues
December of 2009 – Put on PIP and moved to days for short period to review performance secondary to unprofessional behavior at the desk and not appropriately drawing labs

(Doc. 26, Ex. 7).

The next day, May 11, 2010, Plaintiff underwent the colonoscopy at MGH and was diagnosed with "internal, non-bleeding, severe hemorrhoids." (<u>Id.</u> at Ex. 8). The medical report from the procedure recommended no immediate follow-up treatment and indicated "there is no evidence of bleeding currently." <u>Id.</u>

### III. DISCUSSION

*A. Summary Judgment Standard*

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Barbour v.</u>

Dynamics Research Corp., 63 F.3d 32, 36–37 (1st Cir. 1995)

(quoting Fed. R. Civ. P. 56(c)).  To succeed on a motion for

summary judgment, "the moving party must show that there is an

absence of evidence to support the nonmoving party's position."

Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

    Once the moving party has made such a showing, the burden

shifts to the non-moving party, who "may not rest on mere

allegations or denials of his pleading, but must set forth

specific facts showing there is a genuine issue for trial."

Barbour, 63 F.3d at 37 (internal quotations omitted).  The

non-moving party must establish that there is "sufficient

evidence favoring [its position] for a jury to return a verdict

[in its favor].  If the evidence is merely colorable or is not

significantly probative, summary judgment may be granted."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)

(internal citations omitted).  The Court must "view the facts in

the light most favorable to the non-moving party, drawing all

reasonable inferences in that party's favor."  Barbour, 63 F.3d

at 36 (citation omitted).

**B. FMLA Claims**

    The FMLA entitles eligible employees to "a total of 12

workweeks of leave" for "a serious health condition that makes

the employee unable to perform the functions of [her] position."

29 U.S.C. §§ 2612(a)(1)(D).  A "serious health condition"

includes "an illness, injury, impairment or physical or mental
condition that involves . . . continuing treatment by a health
care provider."  29 C.F.R. § 825.113(a).  Because the remedial
purpose of the FMLA entitles employees to take reasonable leave
for medical purposes, the First Circuit has held "that it will
suffice if an employee is 'unable to perform' his job because of
the need to obtain medical treatment or a diagnosis; he does not
have to be physically unable to work."  Hodgens v. General
Dynamics Corp., 144 F.3d 151, 164 (1st Cir. 1998)(holding that
the FMLA protected medically necessary absences for employee to
visit his physician).

A serious health condition involving "continuing treatment"
includes:

> A period of incapacity of more than three consecutive,
> full calendar days, and any subsequent treatment or
> period of incapacity relating to the same condition, that
> also involves:
>
> > (1) Treatment two or more times, within 30 days of
> > the first day of incapacity, unless extenuating
> > circumstances exist, by a health care provider, by a
> > nurse under direct supervision of a health care
> > provider, or by a provider of health care services
> > (e.g., physical therapist) under orders of, or on
> > referral by, a health care provider; or
> >
> > (2) Treatment by a health care provider on at
> > least one occasion, which results in a regimen of
> > continuing treatment under the supervision of the
> > health care provider.

29 C.F.R. § 825.115(a).  "The term 'treatment' includes (but is
not limited to) examinations to determine if a serious health

condition exists and evaluations of the condition."   29 C.F.R. §

825.113(c).   The term "serious health condition" is not "intended

to cover short-term conditions for which treatment and recovery

are very brief, since such conditions would generally be covered

by employers' sick leave policies."   See 58 Fed. Reg. 31,794,

31,799 (June 4, 1993).

Plaintiff has presented sufficient evidence that her

hemorrhoids represented an "illness, injury, impairment or

physical or mental condition" and that she was incapacitated for

"more than three consecutive, full calendar days" from Friday,

May 7, when she left work, through May 11, the date of the

colonoscopy.

The question is whether plaintiff received "continuing

treatment," which requires "treatment two or more times, within

30 days of the first day of incapacity" or "treatment . . . on at

least one occasion, which results in a regimen of continuing

treatment."   29 C.F.R. § 825.115(a).   The issue is not with the

number of treatments she received but with the timing of those

treatments relative to her incapacity.   Two Courts of Appeals

have held that the treatment described in § 825.115(a)(1) must

take place during the "period of incapacity."   See Jones v. Denver

Pub. Schs., 427 F.3d 1315, 1321 (10th Cir. 2005) ("[T]o qualify

for FMLA protection, the health condition must be sufficiently

serious that it entails an absence of more than three consecutive

calendar days during which the employee obtained treatment by a
health care provider at least two times (or one time followed by
a regimen of continuing treatment).”); Branham v. Gannett
Satellite Information Network, Inc., 619 F.3d 563, 571 (6th Cir.
2010) (“The only timing requirement relevant to this inquiry is
that the second treatment must occur during the same period of
incapacity as the first, defined to include the original period
of more than three consecutive calendar days of incapacity and
any subsequent period of incapacity relating to the same
condition.”).

     The record indicates the Plaintiff became incapacitated
during her May 6-7, 2010 shift.  She visited the doctor on both
May 5 and May 6, 2010 due to bleeding, but the medical records
and testimony concerning those days do not reflect
incapacitation.  See (Doc. 26, Exs. 1,2,8); (Pl’s Dep. at 18-27).
Plaintiff completed her May 5-6 shift and does not claim she was
incapacitated when she began her May 6-7 shift.  (Pl’s Dep. at
18-26).  According to her brief, while at work on May 6-7, 2010,
the “bleeding worsened, and she found herself light headed, and
on the verge of fainting.  This incapacitated her from caring for
patients safely.”  (Doc. 26 at 6).  Additionally, according to
her version, “[f]rom the time her bleeding increased on May 7
making her light headed, through regimen preparation,
colonoscopy, and anesthesia, Ms. Nansamba was unable to work for

more than five days or so, at least two more days than the legal
threshold of three days." (Id. at 7).

Having established that her incapacity began at the time her
bleeding worsened on May 7, Nansamba must have been treated at
least twice before that period of incapacity ended to have
received "continuing treatment" under 29 C.F.R. § 825.115(a)(1).
See Jones, 427 F.3d at 1321.  This did not occur.  Plaintiff was
prescribed the pre-colonoscopy medications over the telephone on
May 7, 2010 but did not see a doctor again until her colonoscopy
on May 11, 2010.  (Pl's Dep. at 27-28).  Following the
colonoscopy, Plaintiff testified that she saw her doctor again on
an unknown date in June 2010 ("maybe [June] 8"), (Pl's Dep. at
112), but does not allege that she was incapacitated past her
colonoscopy or that she received treatment during this visit.
She answered "none" or "no" when asked "how many times have you
seen a doctor for hemorrhoids since May, 2010," "have you taken
any medications for hemorrhoids," and "since [your diagnosis],
have you received any medical treatment for hemorrhoids?"  (Pl's
Dep. at 54).  Thus, Plaintiff's period of incapacity that
commenced when her bleeding worsened and ended the day after the
colonoscopy involved only a single treatment for hemorrhoids on
May 11, 2010.

Additionally, Plaintiff did not receive "treatment by a
health care provider on at least one occasion, which [resulted]

in a regimen of continuing treatment . . ."  29 C.F.R. §

825.115(a)(2).  Such a regimen:

> "includes, for example, a course of prescribed medication
> (e.g., an antibiotic) or therapy requiring special equipment
> to resolve or alleviate the health condition (e.g., oxygen).
> A regimen of continuing treatment that includes the taking
> of over-the-counter medications . . . that can be initiated
> without a visit to a health care provider, is not, by
> itself, sufficient to constitute a regimen of continuing
> treatment for purposes of FMLA leave."

29 C.F.R. § 825.113(c).   A qualifying regimen must be undertaken

"to resolve the health condition."  Hodgens, 144 F.3d at 165.

Qualifying regimens that include prescription medication require

those medications be prescribed to treat the symptoms at issue.

See, e.g., D'Amico v. Compass Group USA, Inc., 198 F.Supp.2d 18,

22 (D.Mass. 2002) (Plaintiff prescribed Paxil to treat

depression); Wheeler v. Pioneer Developmental Services, Inc., 349

F.Supp.2d 158, 168 (D.Mass. 2004) (Plaintiff prescribed

antibiotic Doxycycline to treat upper respiratory infection).

Plaintiff claims she received treatment for her hemorrhoids,

pointing to her doctor's prescriptions of bisacodyl and

Halflytely to "clear her gastrointestinal system in preparation

for the colonoscopy."  (Doc. 26 at 6).  However, the record

indicates that these medications prepared Nansamba's system for

the colonoscopy and do not constitute a regimen of continuing

treatment for the hemorrhoids.

The material facts of record, viewed in the light most

favorable to the Plaintiff, establish as a matter of law that she

suffered from hemorrhoids but she did not suffer a "serious health condition" as defined by the FMLA.  She has provided no evidence that she received "continuing treatment" under 29 C.F.R. § 825.115(a)(1) because she did not receive treatment two or more times during her period of incapacity.  She also failed to produce any evidence that she received "continuing treatment" under § 825.115(a)(2) because her treatment did not involve a regimen of continuing treatment.

## *C. State Law Claim*

Defendants removed the case based on federal question jurisdiction, arising from Plaintiff's FMLA claim.  See 28 U.S.C. § 1441(c); 28 U.S.C. § 1331.  Plaintiff's state law claim was also removed.  The Court declines to exercise supplemental jurisdiction over the state law claim.  See 28 U.S.C. § 1367(c)(3).  The case is remanded to state court.

## IV. Order

Defendant's Motion for Summary Judgment is **ALLOWED** for the FMLA claims. (Doc. 23).  The state law claim is remanded.

 /s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge